**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 11-1743

TODD R. RICH,

Plaintiff, Appellant,

v.

GEORGE LAPOINTE, Commissioner,
Maine Department of Marine Resources,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Chief Judge,
Souter, Associate Justice,[*]
and Stahl, Circuit Judge.

Nicholas H. Walsh for appellant.
William R. Fisher, Assistant Attorney General, with whom
William J. Schneider, Attorney General, was on brief, for appellee.

June 21, 2012

---

[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice.**  In this action under 42 U.S.C. § 1983, Todd Rich claims that George LaPointe, in his capacity as Commissioner of the Maine Department of Marine Resources,[1] violated procedural due process while acting under an erroneous understanding of his legal authority in suspending Rich's lobster and crab-taking licence for a period beyond one year.  Rich appeals the district court's grant of summary judgment for the defendant Commissioner.  Rich v. LaPointe, No. 2:10-cv-300, 2011 WL 2518623 (D. Me. June 24, 2011).  We affirm.

A state marine patrol officer discovered eight lobster traps belonging to another fisherman on Rich's boat and charged him in the Maine (state) District Court, so far as it matters here, with violating Me. Rev. Stat. tit. 12, § 6434, prohibiting the "molesting" of lobster gear.  Traditionally, this was a criminal offense carrying a mandatory three-year administrative suspension of the fishing license of a "permit holder . . . convicted," see Me. Rev. Stat. tit. 12, § 6402, but just before the incident in question the state legislature converted the offense to a civil violation subject to fine, see id. § 6434(3-A).  The suspension provision, § 6402, remained on the books nevertheless.  The push to amend had come from the state, in order to make it easier to enforce the molestation prohibition without diminishing the seriousness of the offense.

---

[1] There has been no formal substitution of his successor.

-2-

Rich and his counsel worked out an agreement with the state's lawyer to admit the molestation in return for dismissal of other charges not involved here. On the day set for disposition in the state district court, however, neither Rich nor his counsel appeared, and he was held liable under § 6434 by default. When the Maine Department of Marine Resources was informed of the judgment, it notified Rich of the three-year suspension, to be imposed without further hearing. Rich responded with an unsuccessful motion for reconsideration of the liability judgment in the state district court, and then resorted to statutory appeal of the Commissioner's administrative action to the state superior court, arguing that as a merely civil offender under the amended molestation statute he was not a person "convicted" within the meaning of the unamended three-year suspension provision. The superior court found his position "counter to the clear intent of the legislature," and denied relief just one day short of the first anniversary of the appeal date. From that judgment he appealed further to the Supreme Judicial Court of Maine, the Law Court, which held for Rich nearly a year later, on the ground that the "convicted" language of the unamended penalty statute plainly excluded the merely civil offenders who might be found responsible under the revised liability definition. Rich v. Dep't of Marine Res., 994 A.2d 815 (Me. 2010).

This § 1983 action followed, claiming a denial of procedural due process of law, by a person acting under color of state law, in depriving Rich of his property in the fishing licence beyond the period of one year that Rich concedes was authorized by a statute not otherwise of concern here. See Me. Rev. Stat. tit. 12, § 6402. He argues that the Commissioner's action was a clear violation of state law, and was constitutionally defective both for his failure to provide a hearing before the license suspension became effective, and for the failure of state law to provide adequate post-deprivation process for advancing Rich's ultimately successful position. The federal district court entered summary judgment for the defendant, a result that on de novo review, Méndez-Aponte v. Bonilla, 645 F.3d 60, 64 (1st Cir. 2011), we think was correct.

There is no dispute here that Rich's claim satisfies the threshold elements required for relief under § 1983: the Commissioner was acting under color of state law, and the fishing license was a species of property, of which the suspension order deprived him until vacated in the wake of the state appellate court's judgment. The only issue is the adequacy of the procedure available to Rich to vindicate his interest.

As for procedural protection that might be due prior to the suspension order, Rich, of course, does not deny that he had the opportunity for a hearing on the factual basis claimed for the

suspension (his possession of another lobsterman's traps), an opportunity in the state district court that he agreed to waive and ultimately lost by defaulting altogether. But he argues that due process demands more than this trial opportunity, for two reasons. First, he says that prior to his agreement and subsequent default in lieu of trial on the molestation charge he was never informed by the state (or, for that matter, by his own counsel) that a three-year suspension would be ordered as a consequence. Moreover, he claims that regardless of the court hearing on the underlying charge, administrative punishment for a civil violation with a suspension conditioned on a criminal conviction is the sort of illegal state action that should not be suffered without a chance to explain an objection in advance.

Each argument rests on a faulty premise. The assertion that due process called for the state or its district court to warn Rich that the Commissioner would impose a three-year suspension seems to assume that the court could not recognize a default for failure to appear, let alone a negotiated settlement, without a warning of consequences it could trigger at the hands of a state executive branch official. This assumption is made out of whole cloth, and Rich makes no attempt to support any analogy to the rule that may have prompted it: that a court must assure that waivers of federal constitutional rights be made knowingly before a court may

accept a guilty plea to a criminal charge.  See Boykin v. Alabama, 395 U.S. 238 (1969).

Rich's second point, that imposing a penalty for "conviction" after a civil default judgment violates the Constitution absent some further predeprivation process, is best evaluated by looking to a sample of the cases he cites as authority.  He relies, for example, on Freeman v. Blair, 862 F.2d 1330 (8th Cir. 1988), denying qualified immunity for a predeprivation process violation in summarily suspending an occupational permit without establishing a "hazardous condition," the factual predicate required by a state statute.  Likewise, he points to Guillemard-Ginorio v. Contreras-Gómez, 490 F.3d 31 (1st Cir. 2007), holding that the suspension of an insurance license without opportunity for a hearing violated due process.  But in Rich's case there was a predeprivation opportunity to litigate facts, and there was no dispute about them after the defaulted district court proceeding.  Probably, Rich comes closest to revealing his intended point when he cites Malley v. Briggs, 475 U.S. 335, 341 (1986) for the proposition that those who knowingly commit substantive constitutional violations have no qualified immunity.  His implicit point is that the Commissioner's misapplication of the penalty statute must have been knowing, with the consequence that relying on its summary procedure must have been a due process violation per se.  But if this is Rich's point,

it is answered by the rule that action by an official based on a mistake of state law is not a due process violation or its equivalent.  <u>Alton Land Trust</u> v. <u>Town of Alton</u>, 745 F.2d 730, 732-33 (1st Cir. 1984); <u>see</u> <u>Burgess</u> v. <u>Ryan</u>, 996 F.2d 180, 184 (7th Cir. 1993).[2]

It is, however, properly categorized as a random and unauthorized error, as to which due process is adequately served by a post-deprivation hearing.  <u>See</u> <u>Parratt</u> v. <u>Taylor</u>, 451 U.S. 527 (1981) (negligent deprivation of property), <u>overruled on other grounds</u> by <u>Daniels</u> v. <u>Williams</u>, 474 U.S. 327 (1986); <u>Hudson</u> v. <u>Palmer</u>, 468 U.S. 517 (1984) (intentional deprivation of property); <u>see also</u> <u>Hadfield</u> v. <u>McDonough</u>, 407 F.3d 11, 19 (1st Cir. 2005).  Rich resists this authority by claiming that the Commissioner's conformity with settled procedure excludes the <u>Parratt-Hudson</u> rule as inapposite.  But he cannot have it both ways: his whole argument rests on the claim that the Commissioner was plainly acting without authority in a suddenly novel situation, by imposing a mandatory suspension predicated only on newly created civil liability but no criminal conviction.  This is not a description of "settled procedure," and this is a case in which reliance on post-deprivation process will do.

---

[2] We do not understand Rich to be raising any issue of substantive, as distinct from procedural, due process.  In any event, the Commissioner's interpretive mistake, repeated by the Superior Court, is not even arguably the sort of arbitrary action that could support a substantive due process claim.

Here, that post-deprivation avenue was the appeal to the Maine Superior Court, subject to ultimate review by the Law Court. Rich says that the appellate process failed to satisfy the constitutional guarantee because it took so long to work through. He points out that he was in harsh economic straits by the time the Maine Law Court finally held that both the Commissioner and the Superior Court had been mistaken, and declared the three-year suspension provision inapplicable to a civil violation. But we think this claim of inadequate process is not well taken. Rich does not deny that he could have asked the courts to stay the licence suspension during appeal, at least as to the period beyond the one year for which he agrees suspension would have been proper. Indeed, though we do not rest on this, the superior court judgment issued within that one-year period (tolled for the two months' extension of time for briefing requested by Rich). Thus, the reason Rich suffered the longer suspension is not attributable to a failure to provide adequately timely process, but to what the state's final judicial authority determined was an unsound reading of the governing statutes. And as we just mentioned, legal error without more does not equate to a denial of due process of law.

**Affirmed**.